Case 4:19-cv-00974 Document 44 Filed on 05/29/20 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
May 29, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| 5556 GASMER MANAGEMENT LLC, Plaintiff, | § § § § § | CIVIL ACTION NO. 19-cv-00974 |
| vs. | § § § § | JUDGE CHARLES ESKRIDGE |
| UNDERWRITERS AT LLOYD'S, LONDON, *et al*, Defendants. | § § § § § | |

### MEMORANDUM AND ORDER
### COMPELLING ARBITRATION AND STAYING LITIGATION

This is an insurance coverage dispute. The subject policy contains an arbitration agreement. Before the Court are three motions to compel arbitration by two categories of defendants. The Insurer Defendants are signatories to the policy, and their motion is granted. Dkt 12. The Broker Defendants are not, and their motions are denied. Dkts 14, 18.

All claims in this litigation are stayed until the arbitral proceedings conclude in their entirety.

1. Background

This case arises out of damage caused by Hurricane Harvey to a property located in Houston, Texas. Plaintiff 5556 Gasmer Management LLC takes its name from the address and sought coverage under its commercial insurance policy.

The Insurer Defendants are Certain Underwriters at Lloyd's, London Subscribing Severally to Certificate No AMR-54038-02, Indian Harbor Insurance Co, QBE Specialty Insurance Co, Steadfast Insurance Co, General Security Indemnity Co of Arizona, United Specialty Insurance Co, Lexington Insurance

Co, and Old Republic Union Insurance Co. They issued the subject policy and are signatories to it along with Plaintiff.

The Broker Defendants are AmRisc LLC and US Risk LLC. The developed and placed the policy and are not signatories to it.

Plaintiff's insurance policy contains an arbitration agreement with the following delegation clause:

> All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Dkt 1-1 at 37. The agreement elsewhere provides that the arbitration tribunal will consist of persons "employed or engaged in a senior position in Insurance underwriting or claims." Ibid. Such arbitration is to occur in New York applying New York law. Id at 38.

Plaintiff commenced this action in February 2019, alleging that the Insurer Defendants wrongfully denied coverage after failing to reasonably investigate its claim. They face claims for declaratory judgment, breach of contract, violations of the Texas Insurance Code, and bad faith.

Plaintiff also alleges that the Broker Defendants deceived it when placing the insurance policy. Plaintiff asserts that when they "prepared a proposal" for the policy now at issue, they "failed to disclose and/or intentionally omitted" disclosure that the policy "includes a unique and extremely onerous Arbitration Clause." Dkt 1-11 at 9. It pursues claims under Texas Insurance Code §§ 541.051 and 541.061 for "misrepresenting by omission." Ibid.

This matter was transferred to this Court in November 2019. Dkt 29.

### 2. Analysis

The motions to compel arbitration are brought by both signatories and nonsignatories to the insurance policy. Legal standards as pertinent to each category are set out within the analysis that follows.

2

> a. Arbitrability of claims against the signatory Insurer Defendants

Plaintiff does not dispute that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards governs this arbitration agreement. Congress implemented the Convention via the Convention Act. 9 USC § 201 et seq. The Convention Act incorporates the Federal Arbitration Act to the extent that the FAA does not conflict with the Convention Act or the Convention as ratified by the United States. See 9 USC § 208; see also *Freudensprung v Offshore Technical Services, Inc*, 379 F3d 327, 339 (5th Cir 2004) (citations omitted).

Review of arbitration agreements governed by the Convention is quite limited, and the Fifth Circuit has established a rather straightforward framework for analysis. A court must compel arbitration if:

- There is a written agreement to arbitrate the matter;
- The agreement provides for arbitration in a Convention signatory nation;
- The agreement arises out of a commercial legal relationship; and
- A party to the agreement is either not an American citizen or a reasonable connection exists between the parties' commercial relationship and a foreign state that is independent of the arbitration clause itself.

Id at 339, 341 (citations omitted).

No party disputes that each of these is present here. The pertinent insurance policy establishes a commercial legal relationship and contains an expansive arbitration agreement. Arbitration is to be seated in the United States in New York. And some of the Insurer Defendants are foreign entities.

The Convention and Convention Act almost uniformly require the district court to order arbitration once it determines that these requirements are met. *Freudensprung*, 379 F3d at 339. The only exceptions are provided in the Convention itself—where the arbitration agreement is found to be "null and void, inoperative or incapable of being performed." Convention,

3

Article II(3); see also *Freudensprung*, 379 F3d at 339, citing *Sedco, Inc v Petroleos Mexicanos Mexican National Oil Co (Pemex)*, 767 F2d 1140, 1146 (5th Cir 1985).

Plaintiff's argument isn't exactly clear, initially lumping all three exceptions together after assertion that the arbitration agreement is "unconscionable." Dkt 16 at 2. But later argument focuses on the *null and void* clause, by which Plaintiff seeks to strike the arbitration agreement from the policy as "unconscionable and null and void as to public policy and thus, unenforceable under Texas law." Id at 6. This is so, says Plaintiff, because the agreement specifies that the arbitration tribunal must be composed of persons employed in senior positions in insurance underwriting or claims, seated in New York and applying New York law, with strict limitations set as to the available categories of damages and recoverable costs. Id at 2–3 (summary of arguments appearing at 7–18). Contrary to those express terms in its insurance policy, Plaintiff argues that it is entitled to trial before a jury in Texas applying Texas law, with the ability to seek punitive, multiple, and consequential damages.

The Southern District of Texas rejected a similar line of argument in *Simon v Princess Cruise Lines, Ltd* with respect to arbitral limitations on that plaintiff's claims and remedies under the Jones Act. 2014 WL 12617820 (SD Tex). Judge Atlas there determined that the *null and void* clause is limited to standard breach-of-contract defenses capable of being applied neutrally on an international scale—such as fraud, mistake, duress, waiver, and the like. 2014 WL 12617820, *3 (SD Tex), citing *Bautista v Star Cruises*, 396 F3d 1289, 1302 (11th Cir 2005), and *DiMercurio v Sphere Drake Insurance, PLC*, 202 F3d 71, 79 (1st Cir 2000); see also *Freudensprung*, 379 F3d at 341. Plaintiff does not allege that the arbitration agreement or its delegation provision was obtained through any of these means. The exceptions set out in the Convention thus do not apply.

As to the merits of Plaintiff's public policy arguments, their resolution does not precede the reference to arbitration but instead follows as a permissible challenge to the tribunal's award at the conclusion of those proceedings. See *Simon*, 2014 WL 12617820 at *3, citing *Lindo v NCL (Bahamas), Ltd*, 652 F3d 1257,

4

1262 (11th Cir 2011). The Convention Act textually provides for assertion of challenges to an arbitral award after those proceedings conclude. It states, "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 USC § 207. Article V of the Convention in turn lists seven defenses that courts may consider on proceedings to recognize and enforce an arbitral award, with one concerning situations where "recognition and enforcement of the award would be contrary to the public policy" of the country in which recognition and enforcement are sought. Convention, Article V(2). As such, the Court declines to provide any view now on the merits of Plaintiff's assertions about the requirements of Texas law. The tribunal should instead make its own independent review of any issues presented without prior influence.

To the extent Plaintiff calls into question the breadth of the delegation clause in the parties' arbitration agreement, the Southern District of Texas earlier this year considered this exact clause and determined that it submits all disputes including validity to arbitration. See *Bhandara Family Living Trust v Underwriters at Lloyd's, London*, 2020 WL 1482559, *4 (SD Tex). And two district courts from outside this circuit have also recently examined this clause and reached the same conclusion. See *Ytech 180 Units Miami Beach Investments LLC v Certain Underwriters at Lloyd's, London*, 359 F Supp 3d 1253, 1266 (SD Fla 2019); *Corpus Christi ISD v Amrisc, LLC*, 2019 WL 2051696, *3 (EDNY).

This Court agrees that *all* means just that—*all*. But even if it somehow didn't, the delegation clause on its face makes "formation and validity" of the arbitration agreement expressly part and parcel of "all disputes" that must be submitted to arbitration. Dkt 1-1 at 37. Parties may create a "presumption of arbitrability" by drafting a broad arbitration clause that purports to cover all claims, disputes, and other matters relating to the contract or its breach. *Halliburton Energy Services, Inc v Ironshore Specialty Insurance Co*, 921 F3d 522, 538 (5th Cir 2019), quoting *American Realty Trust, Inc v JDN Real Estate-McKinney, LP*, 74 SW3d 527, 531 (Tex App—Dallas 2002, pet denied). Doing so evinces

5

"'clear and unmistakable evidence' that the parties intended to arbitrate." *Lloyd's Syndicate 457 v FloaTEC, LLC*, 921 F3d 508, 514, quoting *IQ Products Co v WD-40 Co*, 871 F3d 344, 348 (5th Cir 2017). As stated by the Supreme Court just last year, "When the parties' contract delegates the arbitrability question to the arbitrator, a court may not override the contract." *Henry Schein, Inc v Archer and White Sales, Inc*, 139 S Ct 524, 529 (2019).

The delegation clause here textually refers *all* disputes to arbitration including gateway issues of arbitrability and contractual validity. Whether the merits of Plaintiff's claims will be arbitrated rather than tried in court is a decision properly left in these circumstances and under this contract to the arbitration tribunal. See *Kubala v Supreme Production Services, Inc*, 830 F3d 199, 204 (5th Cir 2016).

Arbitration will be compelled on this basis.

        b.   Arbitrability of claims against the nonsignatory Broker Defendants

The allegations by Plaintiff against the Broker Defendants concern misrepresentations or omissions allegedly made during the negotiations of the subject insurance policy. The Broker Defendants also seek to compel arbitration of these claims.

As just noted, the scope of the policy's delegation clause is broad and includes disputes relating to the *formation* of the insurance contract. But it is not quite so simple to say that the arbitration agreement extends to these *formation-like* claims against the Broker Defendants, for they did not sign and are not a party to the contract that includes it. Plaintiff is also adamant that its claims against the Broker Defendants do not proceed on contractual grounds. Rather, the claims proceed under Texas Insurance Code §§ 541.051 and 541.061 for "misrepresenting by omission." Dkt 20 at 3–4; Dkt 22 at 4.

The Supreme Court instructs that a nonsignatory may invoke arbitration so long as the applicable state law allows enforcement by a nonparty. *Arthur Andersen LLP v Carlisle*, 556 US 624, 631 (2009); see also *Halliburton Energy Services*, 921 F3d at 531. The usual grounds under state law that allow a nonsignatory to enforce an arbitration against a signatory include incorporation by reference, assumption, agency, veil-piercing or alter ego, third-

6

party beneficiary, and estoppel. *Arthur Anderson*, 556 US at 631; see also *Randle v Metropolitan Transit Authority of Harris County*, 2018 WL 4701567, *3 (SD Tex), citing *Bridas S.A.P.I.C. v Government of Turkmenistan*, 345 F3d 347, 362 (5th Cir 2003).

The Broker Defendants move to compel arbitration of the claims against them under principles of equitable estoppel. The parties purport to dispute whether Texas or New York law applies to this question. Yet the contract law of both states provides for equitable estoppel theories. See generally *Jody James Farms, JV v Altman Group, Inc*, 547 SW3d 624, 636 (Tex 2018); *Sokol Holdings, Inc v BMB Munai, Inc*, 542 F3d 354, 358 (2d Cir 2008). Indeed, the parties cite cases throughout their briefing under the laws of both, without arguing that one is more favorable or that any meaningful distinction exists. A choice needn't be made between the laws of Texas and New York where no actual conflict is asserted. *Jacked Up, LLC v Sara Lee Corp*, 854 F3d 797, 813 (5th Cir 2017), citing *Schneider National Transport v Ford Motor Co*, 280 F3d 532, 536 (5th Cir 2002). But given that the substantive claim at issue arises under the Texas Insurance Code as brought by a Texas limited liability company, the Court primarily considers the issue according to Texas law.

Equitable estoppel "prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." *Jody James Farms*, 547 SW3d at 636, quoting *In re Weekley Homes, LP*, 180 SW3d 127, 133 (Tex 2005). As pertinent here, the doctrine can apply either when the claims of a signatory party against a nonsignatory are intimately founded in and intertwined with the underlying contract obligations, or when the signatory party seeks a direct benefit from the contract in its claim against the nonsignatory. Ibid (citations omitted); see also *Sokol Holdings*, 542 F3d at 358 (applying New York law).

### i. Intertwined-claims estoppel

It is not completely clear that Texas law recognizes intertwined-claims estoppel. The Fifth Circuit predicted that Texas law will eventually provide for it. See *Hays v HCA Holdings, Inc*, 838 F3d 605, 611–12 (5th Cir 2016); see also *Randle*, 2018 WL 4701567 at *8. But the Texas Supreme Court recently declined the opportunity to definitively adopt it because there was no

7

showing of its applicability in that case. See *Jody James Farms*, 547 SW3d at 639; see also *In re Merrill Lynch Trust Co FSB*, 235 SW3d 185, 193 (Tex 2007). Even so, the Texas Supreme Court closely analyzed this doctrine by reference to Second Circuit precedent under New York law. Id at 639–640.

The Texas Supreme made clear at the outset that the obligation to arbitrate depends on consent, not coercion. *Jody James Farms*, 547 SW3d at 639, citing *Merrill Lynch Trust*, 235 SW3d at 192. To compel arbitration with a nonsignatory under intertwined-claims estoppel, there must be, first, a sufficiently close relationship between the nonsignatory and a signatory, and second, claims that are "intimately founded in and intertwined with the underlying contract obligations." *Jody James Farms*, 547 SW3d at 639, quoting *Thomson–CSF, SA v American Arbitration Association*, 64 F3d 773, 779 (2d Cir 1995).

The Broker Defendants argue that a contention in Plaintiff's complaint is alone enough to establish that they have the requisite *close relationship* with the Insurer Defendants. AmRisc characterizes a portion of the complaint as alleging a "contractual 'scheme' between AmRisc and the Insurer Defendants related to the development and sale of insurance policies." Dkt 21 at 5. US Risk refers to this same part of the complaint without the pejorative of labeling it a "scheme." Dkt 18 at 8–9.

Curiously absent is any evidence sponsored by either of them to establish their supposedly close relationship with the Insurer Defendants. But such evidence is critical, where the Texas Supreme Court cited with approval to Second Circuit cases compelling arbitration under circumstances that "typically involve some corporate affiliation between a signatory and non-signatory, not just a working relationship." *Jody James Farms*, 547 SW3d at 640, citing *Sokol Holdings*, 542 F3d at 361 (surveying cases). And as in *Jody James Farms*, nothing indicates that the Broker Defendants and the Insurer Defendants are "anything other than independent and distinct entities." 547 SW3d at 640. Indeed, the sum total of pleading as to the relationship between the Insurer Defendants and the Broker Defendants is as follows:

> Upon information and belief, the Broker Defendants were involved in developing the

> insurance coverages and selling portions of the risk to the Insurance Defendants who, in turn, provide coverage under the Policy pursuant to the Contract Allocation Endorsement.

Dkt 1-11 at 6.

*Jody James Farms* specifically dealt with claims brought in relation to an insurance policy. Plaintiff there had purchased crop insurance. After losing in arbitration against the insurer who denied coverage, it sued the insurance agency who sold it the policy for breach of fiduciary duty and deceptive trade practices. 547 SW3d at 630. The Texas Supreme Court held, "A reasonable consumer would not anticipate being forced to litigate complaints against an independent insurance agent in the same manner they agreed to litigate disputes with the insurer." *Jody James*, 547 SW3d at 640; see also *Randle*, 2018 WL 4701567 at \*\*8–9.

So, too, here. The contentions in Plaintiff's complaint on their own simply do not establish a close enough relationship between the brokers and the insurers. The claims against the Broker Defendants are not referable to arbitration on this basis.

ii. Direct-benefits estoppel

The Broker Defendants also assert direct-benefits estoppel, arguing that the claims against them necessarily depend upon reference to the insurance policy and are thus subject to the arbitration agreement. This is a closer question.

The Texas Supreme Court holds that equity prevents a party from avoiding an arbitration clause within a contract where the party's claim "depends on the contract's existence and cannot stand independently—that is, the alleged liability 'arises solely from the contract or must be determined by reference to it.'" *Jody James Farms*, 547 SW3d at 636, quoting *Weekley Homes*, 180 SW3d at 132. This prohibits a party from knowingly exploiting the subject contract while also avoiding the requirements of an arbitration clause included within that contract. *Randle*, 2018 WL 4701567 at \*9, citing *Bridas*, 345 F3d at 362; see also *Trina Solar US, Inc v Jasmin Solar Pty Ltd*, 954 F3d 567, 572 (2d Cir 2020) (citations omitted).

9

But the Texas Supreme Court was careful to note that the underlying source of the plaintiff's claim matters. Thus, "when the substance of the claim arises from general obligations imposed by state law"—and not from the underlying agreement—direct-benefits estoppel is not implicated "even if the claim refers to or relates to the contract or would not have arisen 'but for' the contract's existence." *Jody James Farms*, 547 SW3d at 636 (citations omitted).

Plaintiff asserts claims against the Broker Defendants for misrepresentations and omissions made prior to the purchase of the subject insurance policy containing the arbitration agreement. The claims thus arise out of general obligations imposed by the Texas Insurance Code and not for breach of the insurance policy. True, the claims refer to the arbitration provisions as the subject of the supposed misrepresentations or omissions. But the Texas Supreme Court has determined that "a mere relationship between the signatory's claims and the contract containing an arbitration provision was not enough to compel a signatory to arbitrate claims against third parties under a direct-benefits estoppel theory." Id at 637, citing *G.T. Leach Builders, LLC v Sapphire V.P., LP*, 458 SW3d 502, 527–30 (Tex 2015).

The facts of *Jody James Farms* are described above. As to direct-benefits estoppel, the Texas Supreme Court concluded:

> [Plaintiff] might seek a measure of loss that equates to the amount of the contract loss, but direct-benefits estoppel does not apply simply because "the claim *refers* . . . to the contract." Instead, liability "'must be determined by reference to it.'" Rather than relying on the insurance policy, [Plaintiff's] complaint premises the [insurance agency's] liability on tort and DTPA duties that are general, non-contract obligations.

547 SW3d at 638 (emphasis in original), quoting *G.T. Leach*, 458 SW3d at 528, in turn quoting *Weekley Homes*, 180 SW3d at 132. This variant of estoppel theory is thus equally inapplicable here.

The Broker Defendants cite other decisions they say warrant direct-benefits estoppel. For instance, in *Randle v Metropolitan*

*Transit Authority of Harris County*, the plaintiff signed several contracts containing arbitration agreements with a taxicab leasing company that allowed him to work as a subcontractor to a public transportation provider. 2018 WL 4701567 at *1. The plaintiff then asserted FLSA violations against a third party with whom he did not have a contract. Ibid. Chief Judge Rosenthal concluded under Texas law that it "will have to interpret" the contract containing the arbitration agreement to decide the merits of the signatory's claim. Id at *10. Given the plaintiff's "necessary reliance" on the subject contract to establish his claim, direct-benefits estoppel applied. Ibid. Likewise, under New York law, the court in *Hoffman v Finger Lakes Instrumentation, LLC* held that a signatory to an arbitration agreement could not "seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains the arbitration provision," while also denying applicability of the provision because the other wasn't a party to the agreement. 7 Misc 3d 179, 185 (NY Sup Ct 2005), quoting *Grigson v Creative Artists Agency, LLC*, 210 F3d 524, 528 (5th Cir 2000).

To the contrary here, no interpretation of the insurance policy is necessary to adjudicate the misrepresentation claims asserted by Plaintiff against the Broker Defendants. And Plaintiff in no way seeks to hold the Broker Defendants liable pursuant to duties imposed by that policy. It instead wants to hold them accountable in tort according to theories available under the Texas Insurance Code.

The Broker Defendants also provided notice of a decision that issued after briefing concluded on the subject motions. See *Bhandara Family Living Trust v Underwriters at Lloyd's, London*, 2020 WL 1482559 (SD Tex). That case involved an insurance coverage dispute implicating the same arbitration agreement and delegation clause, as well as similar theories against the same nonsignatory brokers made defendants here. Judge Werlein compelled arbitration according to prior Fifth Circuit decisions there cited to him. Id at **5–6, citing *Westmoreland v Sadoux*, 299 F3d 462, 465 (5th Cir 2002); *Grigson*, 210 F3d at 527. But Plaintiff and the Broker Defendants here address at length the 2018 decision by the Texas Supreme Court in *Jody James Farms*, which

updates and clarifies the controlling principles of state contract law. And while the parties draw diametrically opposed conclusions from it, they squarely recognize *Jody James Farms* as controlling. As already decided above, this Court believes Plaintiff to have the better of that argument.

The Court concludes that the claims pursued by Plaintiff against the Broker Defendants require no interpretation of the underlying insurance policy and arise from duties entirely independent of it. Plaintiff is thus not seeking *direct benefits* of the kind evoking concern under this strand of estoppel theory. The claims against the Broker Defendants are not referable to arbitration on this basis.

### 3. Disposition

The Federal Arbitration Act provides that where any issue is determined to be referable to arbitration under a written arbitration agreement, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." See 9 USC § 3.

The Insurer Defendants request such a stay during the pendency of any arbitral proceedings. Plaintiff does not oppose this if the motion to compel is itself granted. A stay of the litigation against the Insurer Defendants is appropriate.

The Broker Defendants also request a stay of the litigation against them—even if they are not included with the Insurer Defendants on any finding that the suit is referable to arbitration. They argue that Plaintiff has not yet incurred any damages for having to arbitrate its claims pursuant to the arbitration agreement, making any injury speculative at this point. They also note that the tribunal could strike certain provisions that Plaintiff has protested in these motions, which would alter the scope of claims litigated later against themselves.

Plaintiff opposes this, again arguing that its claims against the Broker Defendants "are distinct and different from, and rely upon different facts than, Plaintiff's claims against the Insurer Defendants." Dkt 22 at 18. The Court has already determined that this is so. But the concern as to a stay is different, where the Court has "a general discretionary power to stay proceedings . . . in the interests of justice." *McKnight v Blanchard,* 667 F2d 477, 479

(5th Cir 1982); see also *Citgo Petroleum Corp v M/T Bow Fighter*, 2009 WL 960080, *6 (SD Tex). Plaintiff in no way ventures to establish how damages could be measured against the Broker Defendants in advance of a decision in the arbitral proceedings against the Insurer Defendants. Indeed, any damages on its claim against the Broker Defendants appear to be predicated upon both being referred to arbitration with the Insurer Defendants and losing there. A loss by Plaintiff is not a foregone conclusion, and the breadth and nature of any loss could shape the separate claims against the Broker Defendants.

The action against the Broker Defendants is appropriately stayed during the pendency of any arbitral and confirmation proceedings.

### 4. Conclusion

The motion by the Insurer Defendants to compel arbitration is GRANTED. Dkt 12.

The motions by the Broker Defendants to compel arbitration are DENIED. Dkts 14, 18.

The Court DIRECTS that the claims against the Insurer Defendants will be held in accordance with the arbitration agreement in New York. 9 USC § 206.

The claims against the Insurer Defendants and the Broker Defendants are STAYED until the arbitral and confirmation proceedings conclude.

SO ORDERED.

Signed on May 29, 2020, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge